And if Mr. Geyser would be so kind as to come up to the podium, unless he's already there. Nope, there he is. Good morning. Good morning, your honors, and may it please the court. My name is Elliot Geyser for appellant Jeffrey T. Henson. The Supreme Court created the exclusionary rule to deter police officers from violating the Fourth Amendment. That deterrence rationale is at its apex, according to Davis v. United States, with respect to deliberate, reckless, or grossly negligent violations of the Fourth Amendment, such as here, in this case, searching a vehicle and then, nearly 10 hours later, obtaining a search warrant. As Plymouth Sedan v. Pennsylvania illustrates, that deterrent purpose is served in the quasi-criminal asset forfeiture context, likewise in the quasi-criminal turnover context, a quasi-criminal proceeding to enforce a criminal judgment on a criminal diet. How are we able to define this turnover, motion for turnover, as quasi-criminal? Well, your honor, it starts because this is to enforce a criminal judgment, and the restitution order, like an asset forfeiture order, has a penal component. It's part of the docket that is enforced on the criminal docket itself, and beyond that, not only does it compensate victims, but it also allows society to impose its judgment about the moral wrongness of the conduct of a defendant. What is the distinction between a forfeiture order and that of a restitution order? Well, the primary purpose of an asset forfeiture order is to deprive the defendant, the person who's been convicted of a crime, or of any property that is connected with that crime. And the purpose of restitution, of course, is to compensate victims for the wrong they've done to them. So there is a distinction between the purpose of the forfeiture order and the purpose of a restitution order? Yes, the purposes are distinct, but we argue that they're both quasi-criminal in the sense that both the restitution order and the asset forfeiture, Because we're only focused on the restitution order for purposes of the appeal, it might be helpful to distinguish why the restitution order is quasi-criminal. Yeah, I agree with you, Your Honor. It is quasi-criminal because it appears on a criminal docket. It's part of the sentence. It was part of the plea agreement that Mr. Henson signed where he agreed that he would, and does not contest restitution obligations as part of his criminal judgment. And because it's part of the criminal judgment, even though it has a distinct purpose from asset forfeiture, we argue that the asset forfeiture line of cases, starting with 1-1958 Plymouth Sedan and this court's prior precedent, which the Supreme Court sided with in a circuit split, we argue that that brings us into the ambit of the first principles for why you would extend the exclusionary rule to this type of proceeding. Mr. Gaze, before you continue on your argument, I think we better, I better ask you this. Under what specific statutory provision, such as subsection 636-3008 or another provision, did the district court judge assign the duties to the magistrate judge here? Neither of your jurisdictional statements is helpful. Well, Your Honor, we argue that it was the consent of the parties to the district court assignment to the magistrate. It's unclear from the particular record below where the district court made that assignment, but we argue that jurisdiction lies under 636. The government cites the case U.S. v. Moe as an alternative basis. While we disagree with that, that's, both parties have found that there's jurisdiction here. Oh, well, both parties may have found that, Mr. Gazer, but I'm not so certain we will. Let's talk about Jaquez, all right? I want to read from Jaquez. We recognize that section 3008 and section 636 have some language in common, but their structure is fundamentally different. The norm under 636, as Radatz and Weber explain, is a review by a district judge, and skipping past the district judge in favor of appellate review requires compliance with section 636C. We could not treat section 636 as if it were a clone of section 3008 without tossing out the many distinctive features of 636, and I'm going to go on. Jaquez's appeal must be dismissed because the order was not entered by a district judge, and neither the district court nor the parties used the direct appeal procedure allowed by section 636C. Because we lack appellate jurisdiction, we also lack authority to demand this proceeding to the district court or direct it to proceed in any particular way. All we can do, and all we do do, is dismiss this appeal for lack of jurisdiction. That's Jaquez v. United States, 36F4, 725 and 728, and it's a Seventh Circuit 2022 case. Well, Your Honor, the language that you've quoted is well taken. We think that that's distinguishable in this instance because the parties did consent to the magistrate judge's jurisdiction and then proceeded along the course with the magistrate judge entering this particular order. Can you talk a little bit more about that consent? Because the consent I see is the consent to the change of plea. Correct. I don't see some subsequent consent to adjudicate these turnover issues unless, can you tell us, we don't have a transcript of the turnover hearing. Are you suggesting there was some sort of oral consent? Well, Your Honor, I also haven't seen a transcript of that particular hearing. Nevertheless, we argue that the conduct of the parties in this instance shows that that extent continued beyond the change of plea proceeding. No, no, no. Your conduct can't be part of this, okay? There's law here. You have to be aware of Jaquez. You are, are you not? Yes, correct. Yes, Your Honor. Right. Well, so the Jaquez, from my understanding, doesn't say that once the district court has made its assignment to the magistrate judge to handle certain proceedings and then the parties have entered consent to it, that that consent can't continue. The Jaquez case is distinguishable for, among other reasons, the fact that the local rules here allows a final, a magistrate judge's order to become final if it hasn't been appealed and the parties didn't appeal it to the district judge and so it became final as an order of the . . . No, no, no. The only question here is under what authority the magistrate was assigned, the matter was assigned to the magistrate judge. If under Section 3008, direct appeal is available, but if under most subsections of 636, direct appeal is not available and we would be put in the position of having to dismiss for lack of subject matter jurisdiction. You know what? I'm going to allow you to continue with your argument and I will ask for supplemental briefing on this issue, okay? All right, Your Honor. We would be happy to provide that. I would like to turn to the remedy that we've proposed. Mr. Henson has proposed two alternative remedies to enforce the deterrence purpose of the exclusionary rule in this context. One is to restore the state of the world but for the unlawful search. How do we get around the plea agreement where he agreed to waive by any means of enforcement of the restitution order? How do we get around that waiver? Well, Your Honor, we argue that you should enforce the plea agreement like a contract and the provision of the plea agreement that waives his rights to appeal is separate from the sort of spirit of the agreement that he agreed that he will agree to any enforcement by any means necessary. Those are different things. He never said that he would fail to—he waived any right to appeal any means of enforcement whatsoever even though he's not trying to delay this unduly. For example, someone might agree to serve a term of imprisonment but that doesn't mean that they've thereby agreed that they won't contest an unconstitutional condition of confinement, for example. And so the appeal waiver in paragraph 49 says nothing about contesting post-judgment proceedings to enforce the sentence once that sentence has been imposed. But it does say the term sentence includes, and I'm reading from it here, any term of probation, supervised release, forfeiture order, or restitution order.  If the sentence includes the restitution order. Well, we're not contesting the restitution order. We're contesting the means by which the government has sought to enforce the order that has been imposed. Mr. Henson freely concedes that he owes restitution in this case and isn't saying he doesn't owe that restitution. The question is whether or not the Fourth Amendment violation that he suffered should make any difference in the ability of the government to collect his property to continue to enforce that restitution order. And that's a question that is entirely outside of the ambit of paragraph 49 of the plea agreement. Once the sentence has been imposed, we argue that post-judgment proceedings to try and enforce that proceeding by common legal parlance suggests that that's a distinct proceeding altogether and not covered. And if there's any doubt or ambiguity in the language of the plea agreement, that should be construed against the government as drafting party and in favor of the defendant here. Mr. Gazer, you know the purpose of the exclusionary rule is deterrence. And isn't the potential deterrent impact significantly less in a turnover proceeding as opposed to its use in the underlying criminal trial? Well, Your Honor, we argue that like with asset forfeiture, which is collateral to the criminal trial itself, turnover proceedings are an attempt to enforce against the property of the criminal defendant. And so to sort of complete the triangle between the criminal trial, the asset forfeiture proceeding, and then the proceeding to collect restitution, the exclusionary rule's deterrent effect would be significant. And here it wasn't like the officer's unlawful search was necessary for the government to provide evidence for its case in chief. He wasn't trying to suppress evidence in that context. But it does ease the burden that the government faces in trying to collect its restitution order. And this evidence was waiting on a silver platter because state officers had obtained this evidence in violation of the Fourth Amendment and kept it in an evidence lockup for three and a half years where he wasn't able to use it to satisfy any of the lawful debts that he foreseeably would have incurred between the time of his arrest and the time of the criminal judgment attaching a lien to his property. Now, you know you're getting into your rebuttal time, right? Yes. I would be happy to reserve the remainder of the time that I have for rebuttal. Okay. Thank you. All right. Thank you very much. Let's see. Mr. Holzer. Yes? Yes, Your Honor. How are you? I'm well, Your Honor. Thank you. I'm going to start you off with the very same question. I am going to ask for supplemental briefing as I mentioned, but what's your view of all this? Under what specific statutory provision did the district court judge assign the duties to the magistrate judge here? Your Honor, there was not . . . Oh, forgive me. Your Honor, there was not . . . No. Specific . . . Go ahead. There was not a specific designation in this case. As cited in our brief, any designation would likely arise under the local rule for the district court for the Central District of Illinois, Local Rule 72.1A22, which designates to magistrate judges the authority to perform any additional duties that's not inconsistent with the Constitution and laws of the United States. In this case, Your Honor, the appellant has argued that jurisdiction falls under either 28 U.S.C. 636B or C. The government disagrees. Subparagraph C is out because that applies to civil cases. This is a criminal case. Under 636C, the parties must consent. There was no consent to proceed before a magistrate judge on the turnover order issue and the magistrate judge must be specially designated to exercise jurisdiction. So none of those occurred in this case. Well, then let me say this because, you know, we're in Rashomon territory here. So supplemental briefing, I'll give you 14 days. Each side. Okay? And you obviously know what the issue is. We will send an order out, but I just want to alert you. Very good, Your Honor. If you'd like me to continue to address jurisdiction. Yes, sure. Sure. Well, no, whatever you wish to address. Sure. Just real briefly, to the extent that this court has jurisdiction, it would be based on the court's holding in United States versus new cited in our brief. In that case. In that case, there was a designation, correct? Right. I believe so. I believe that was, that was correct. So that's distinguishable from the facts we have in front of us. Possibly, but we still have this sort of broad general designation under the courts, local rules that automatically designates to magistrate judges, the authority to perform any duties, not inconsistent with federal law. So perhaps the local or sorry, the district court's local rule could serve as a fill in for the designation in the new case. It would be helpful, at least for me in the supplemental briefs, if the parties would address any differences if warranted or permitted among the districts in local rules and applications of these statutes. Yes, Your Honor. Your briefing just got a lot longer. In brief response to Mr. Geiser's arguments regarding some, some sort of implied consent to jurisdiction. This court has been clear that implied consent is inconsistent with what the court requires to evidence the party's consent to have the magistrate judge enter a final order. Moreover, counsel says that neither side appealed to the district judge, thus evidencing consent, but it would be illogical for the government to have appealed in order that it won. So with, with regard to jurisdiction, the authority on point would be the, the court's decision in the United States versus new, which drew a connection between turnover proceedings and the federal debt collection procedures act. And the federal debt collection procedures act had a maybe a jurisdiction savings provision for lack of a better word. And so to the extent the court has jurisdiction, it's going to be through that statute. The very last issue that Mr. Geiser, excuse me, argued was the, a plea agreement situation. And you argued, you argue in the brief that Mr. Henson waved his, his right to challenge the tune turned over order. And I would appreciate your telling me precisely what language you believe can be read as waving a constitutional objection. To the search that yielded the funds subject to the turnover motion here. Sure. Because what it looks like is that what he agreed to was not to request any delay or stay in the payment of any or all financial obligations. But I do not see how that challenge falls neatly within that language. So you help me. Okay. Sure. Sure. Your Honor. Um, the enforcement proceeding in this case took place under 18 U.S.C. 3613. Uh, in the plea agreement, the defendant specifically consents to enforcement of the restitution order under that statutory provision, 18 U.S.C. 3613. Um, as your Honor noted, he also agreed not to obstruct or delay the payment of his restitution obligations. And he stated repeatedly to the district court, um, that he wanted the funds had issued a $17,390 to be applied towards his restitution obligations. We, we have certain regimes in place. We've got asset forfeiture. We've got the citation to discover asset tool that the government can use. Why should we have a world where police officers before a conviction and before a sentence can help themselves to a defendant's money and then keep it. And then after with no, no process until after conviction and sentencing, then turn it over and apply it to restitution. Sure. The timing is the critical issue here. I, it's, it's your Honor noted. Um, the, there is a dispute in this case whether or not the search occurred after the search warrant, but I don't think you've got a record problem on that. Yes, Your Honor. And I could certainly speak to that if, if you'd like me to, um, as far as a pre-judgment seizure of assets, um, that can be accomplished in a variety of ways. There are, uh, provisions within the context of asset forfeiture that does allow for, that's right. None of that happened here. That's correct. What happened in this case, your Honor. And I recognize that this may start treading into areas outside of the record was that the, the property at issue here was seized pursuant to a search warrant. Um, it was seized, uh, by the local authorities. Um, and in this case, I, I, I interpret the question to also, um, kind of touch on the issue of deterrence. What would deter a police officer from doing, um, these sorts of seizures pre-judgment and, and my colleague addressed the deterrence issue as well. Um, but to be clear, the government does not say that turnover proceedings are quasi criminal. In fact, the title of the statute at issue here, 18 USC 36, 13 specifically calls them civil remedies. These are civil remedies that occur within the context of a criminal case. Uh, the deterrence issue is something that you could be, that could be said to any manner of, um, uh, civil matters where the fourth amendment exclusionary rule clearly does not apply. Um, and moreover, uh, on the issue of, of deterrence, uh, the record is clear that Mr. Um, Henson never filed any kind of motion to suppress, uh, just the opposite. He wanted these funds to be applied towards his restitution obligations. And even after the court entered the turnover order, he filed various pleadings asking that the funds be applied to, uh, a special assessment out of the Northern district of Illinois case. In addition to the restitution. When he was, you know, go ahead. I'm sorry. Uh, just briefly when he was pro se and when he believed the United States was already in possession of the money. That's correct. Your Honor. I will add to that. Mr. Uh, Henson is availing himself of his, uh, remedies. He has filed a civil section, 1983 case against the police officers. And that, that total case is currently pending in the central district of Illinois. Uh, you know, as an initial matter, if, uh, If the government's representation in it's a brief is correct. Then the only reason that we even have this case before us, um, right now is because some Danville police officer. Mistakenly believe that noon was 12 AM. Uh, rather than 12 PM and circled AM instead of PM. On the form. Uh, Henson is able to argue that the search was conducted at noon. At the time of the search. If the search was at noon. Then it was conducted pursuant to the warrant that it issued at nine 23 that morning. Because I am, you know, instead of PM was circled on the form next to the number 12. However, Henson is able to argue that the search was conducted at midnight, which would have been nine hours before the warrant was obtained. And so violated the four. Amendment. Can you clear up the timeline here? Absolutely. Your honor. The timing of events all occurred on November 26th, 2019. Uh, the warrant was obtained at nine 23 AM. Uh, at 12 o'clock PM. So a few hours later, the warrant was executed. Um, the records of the investigation consist of the actual police reports. Documenting the search of the vehicle, which were obviously turned over to Mr. Henson. Uh, we have the base stamp copies. I've since I've produced them to, uh, opposing council here before the government filed its brief. Those records show that the search occurred at 12 o'clock PM. The record that Mr. Henson's relying on is a, uh, property receipt, a fill in the blank property receipt. Um, where if this case were to require an evidentiary hearing, the government would put on evidence that the, uh, officer in this case mistakenly circled a instead of, but your briefs make clear that the magistrate did not have this evidence. You're now citing in front of it when it was called upon to make this fourth amendment call that that's, that's correct. Your honor. That's why, um, it would be, I think in Providence for this court to, um, go down the road that opposing council has suggested, which is to find in the first instance of the fourth amendment violation occurred. The magistrate judge never reached that conclusion. It determined as stated in the turnover order that whether or not a fourth amendment, uh, violation occurred is irrelevant to whether or not the assets in this case are subject, subject to a turnover order under 18 USC, 36, 13. Is there anything in the record that explains why there would be a handwritten note on the warrant, uh, specifically broadening the scope of the warrant to include backpacks nine hours before, according to you, a backpack is found with money in it. No, your honor.  um, what the judge hand wrote on the warrant. Um, just, uh, briefly, uh, for, uh, to judge Briar's prior questions earlier about the difference between, uh, forfeiture and restitution. Um, we do believe that there are clear distinctions here between the fundamental purposes of forfeiture and restitution. Um, most specifically forfeiture is intended to be punitive toward the defendant. It's, it's akin to the, the prison time that a defendant must serve. It is punitive. Uh, restitution on the other hand is remedial. Uh, and the, in the old, uh, excuse me, the, um, Plymouth sedan case that, uh, council recognized where, uh, the Supreme court extended the fourth amendment exclusionary rule to civil asset forfeiture proceedings. It was on that distinction that the Supreme court, uh, reached its conclusion. It noted that in civil for civil forfeiture cases, uh, those are punitive, uh, and that, that they often involve some sort of a showing that a crime had occurred. What was interesting in the, um, Plymouth sedan case was that the, uh, the forfeiture of the car itself was going to result in a more significant, uh, penalty to the defendant than he would face in his actual criminal. What about a special assessment? Is that not a penalty? I don't, something else. I have not researched that issue. So whether or not it counts as a penalty, I, I, my hunch is that it likely would. Um, I can speak a little bit to the special assessment because there was a question on the mootness issue with regard to the special assessment. What first I want you to address the special assessment on this penalty, not penalty line, because the government's position is restitution is civil. It's remedial in nature. It's not a penalty, but here we're looking at Mr. Henson. Uh, uh, he's paying both restitution and a special assessment. The money, the 17,000 has been applied to both. That's correct. Your honor. Um, uh, I don't know that there's been, uh, for me an opportunity to research that issue. So whether or not the special assessment is, would be more categorized as a punitive penalty as opposed to something else. Um, but I could, I'd be happy to provide the court with a supplemental briefing on that issue. If the court requires it, um, just briefly on the issue of whether or not, uh, the mootness argument would apply toward this special assessment. Um, I think guidance, uh, can be found in a 2023 case from the ninth circuit United States versus Washington. Uh, that was relatively, um, similar to the facts here, uh, where you had a defendant seeking a return of funds that were seized. Uh, those funds had already been dispersed by the clerk's office, uh, to the victims. Uh, yes, but at least as to the special penalty assessment, the funds remain available to return to be returned. And in my, at my view at this moment, uh, that would be sufficient to avoid mootness. So your honor, uh, the, um, and I, I see my time is up. If I could be permitted, please finish your point. Thank you. Thank you, your honor. Um, in United States versus Washington, the court did not return the special assessment. And I think a distinction between that case and another ninth circuit case, United States versus Hayes, both cited in our brief is that when the conviction is overturned, the special assessment will be returned to the defendant, but that hasn't happened in this case. It didn't happen in the Washington case. Um, moreover, if I could just briefly say, uh, the, the funds in this case went directly from the police department to the clerk's office. They never came through the government to the, as we, as that term is used to represent the executive branch agencies of the government. It went to the clerk's office and the clerk distributed those funds, uh, And apply them to the special assessment pursuant to, uh, two orders from the court, one in the turnover order and one in the text order when the funds were received. Thank you very much. Indeed. Um, uh, Mr. Uh, uh, gaze or had asked for three minutes, but we just gave the government some extra time. So let's give, uh, Mr. Gazer four minutes. Thank you, your honor. Um, I want to briefly address, uh, two points, um, rebuttal. The first point that I want to talk about is whether an actual unlawful search occurred and whether the court can reach that factual dispute. Now we argued in our reply brief that the government knowingly relinquished it's right. And therefore way it's opportunity to contest whether a search had actually occurred. Mr. Henson gave the government at least three opportunities to provide that no search, uh, which would have been a complete defense, both in his motion for a replevin on the closed criminal court docket, which the government answered his motion for sanctions, which was predicated on the argument that the attorneys were deceiving the court by arguing that the funds were retrievable because they had not been seized in violation of the fourth amendment. And then finally, in his argument in front of the magistrate judge, both written and oral, he consistently made the case that these funds were seized prior to a warrant issuing. And it's only now on appeal that the government seeks to introduce evidence outside the record that it could have at least three opportunities made available, uh, to a court to make a ruling on that point. And so we argue that that, uh, has been waived on the part of the government. Uh, the second point I want to talk about briefly is, uh, the mootness question. Um, and I agree with, uh, judge Robner that the special penalty assessment at the very least is within this court's jurisdiction and subject to any reversal on, uh, this court's point. And it also goes to the distinction between forfeiture and restitution. The government in its brief specifically refers to the special penalty assessment. There's a penal element to that. And then the statutory provision that is being used to try and collect, uh, funds in this instance, makes room for not just orders of restitutions, but also fines and penalties or any other money owed. And so the rule of law that we're seeking to have applied that the exclusionary rule, which applies in quasi criminal asset forfeiture would also be able to apply in quasi criminal instances like this case and other cases in which there is some penal quality, uh, that makes the post judgment proceeding a quasi criminal proceeding. There may be some cases in which it is truly just a civil collection, uh, proceeding in which case the exclusionary rules forced might be diminished, but we don't argue that that is diminished here. In fact, we think that it is, um, full and, and forceful. Um, the last point that I wanted to make on mootness is that, uh, beyond the special penalty assessment, the full amount I think is within this court's jurisdiction, at least for the very reasons laid out implicit in justice Ginsburg's opinion in Nelson versus Colorado. If due process requires that a restitution order that had been entered in error, because the criminal defendant is later proved to have not been guilty of the crime. If the government must return that restitution, uh, to the criminal defendant, there has to be some mechanism by which the court can make that order true. And so we've cited the, um, Palookan case from the eighth circuit, as well as a 1998 case Beckner versus us from Louisiana middle district. That explained that if the government disperses money while an appeal is pending, uh, the court of appeals still has authority to order that money returned and not necessarily by clawing it back from the victims, but from whoever erroneously made the disbursement in the first place, which is why we think the government being a solvent entity here is important. Uh, at the end of the day, we would argue that this court should reverse the turnover order and then either return the funds to Mr. Henson or allow him an opportunity to prove up debts lawfully incurred that the court can direct the money be used to satisfy debts that he incurred prior to the entry of the judgment and the lien against him. Thank you. Well, thank you. Thank you very much, Mr. Gasser. You of course were appointed and you have, um, our deep thanks for taking the appointment and for making the first case of the day you and the government, um, a very interesting one. And, um, of course, we also thank the government as always. Uh, thank you, Mr, uh, Holzer for your, uh, fine representation of the government. Oh, all right. Case will be taken under advisement.